UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

CASE NO. _____

JAY KAISER, a resident of
Connecticut,

     Plaintiff,

v.

ALEXANDER MARINE USA, a Foreign Corp.;
ALEXANDER MARINE CO. LTD., a
Foreign Corp.; MERRITT ISLAND BOAT
WORKS, INC., a Florida Corp.;
EASTCOAST YACHT GROUP, a
Florida Corp.; and ALEXANDER MARINE
ENTERPRISES,INC. a Foreign Corp.,

     Defendants.

_____/

## PLAINTIFF'S COMPLAINT FOR DAMAGES

Plaintiff, JAY KAISER, a resident of Connecticut, by and through his undersigned attorneys, files this Complaint for Damages against Defendants, ALEXANDER MARINE CO. LTD., a foreign corporation, ALEXANDER MARINE USA, a foreign corporation, MERRITT ISLAND BOAT WORKS, INC., a Florida corporation, EASTCOAST YACHT GROUP, a Florida corporation, and ALEXANDER MARINE ENTERPRISES, INC., a foreign corporation, and further states:

## PARTIES AND KEY PERSONS

1.    JAY KAISER (hereinafter "KAISER") is *sui juris,* over the age of twenty-one (21), and is a resident of the state of Connecticut.

2.      KAISER is the owner of the 2021 model year Ocean Alexander 70e, (hull no. 29) purchased for $3,490,000 USD on June 17, 2020 (hereinafter "the Yacht").

3.      ALEXANDER MARINE USA (hereinafter "AM USA") is a corporation formed and existing under the laws of the State of Washington with its principal place of business in Seattle, Washington.

4.      AM USA is the entity with which KAISER contracted for the purchase of the Yacht, and was represented to be the seller on the purchase agreement entered into on June 17, 2020 (the "Purchase Agreement").  *A true and correct copy of the Purchase Agreement is attached hereto as Exhibit A.*

5.      ALEXANDER MARINE CO. LTD. (hereinafter "AMC") is a corporation formed and existing under the laws of Taiwan, with its principal place of business in Taiwan.

6.      AMC purports to be the warrantor that issued the Limited Warranty for the Yacht, which was attached and incorporated into the Purchase Agreement. *A true and correct copy of the Express Warranty is attached hereto as Exhibit A, at pages 11-12.*

7.      MERRITT ISLAND BOAT WORKS, INC. (hereinafter "MERRITT ISLAND") is a corporation formed and existing under the laws of the State of Florida, with its principal address in Merritt Island, Florida.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

8.     EASTCOAST YACHT GROUP (hereinafter "EASTCOAST") is a corporation formed and existing under the laws of the State of Florida, with its principal place of business in Ft. Lauderdale, Florida.

9.     ALEXANDER MARINE ENTERPRISES, INC. (hereinafter "AME") is a corporation formed and existing under the laws of the State of Washington, with its principal place of business in Seattle, Washington.

10.    AME is a for-profit holding company owned, operated, and/or controlled by JOHNNY CHUEH, who is also the C.E.O. of AMC.

11.    AME and/or CHUEH are the registered agents and directors for AM USA, MERRITT ISLAND, and EASTCOAST.

12.    AM USA is the alter ego of AME.

13.    MERRITT ISLAND is the alter ego of AME.

14.    EASTCOAST is the alter ego of AME.

15.    Due to the agency and/or alter ego status of the companies, the Defendants are collectively referred to as "the Ocean Alexander Companies" unless stated otherwise.

## JURISDICTION AND VENUE

16.    This Court has diversity jurisdiction by virtue of 28 USC § 1332 because there is diversity of citizenship and the amount in controversy exceeds the sum of $75,000, exclusive of interest, attorney's fees, and costs.

17.    Specifically, KAISER is a citizen and resident of Connecticut.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

18.    None of the Defendants are incorporated in Connecticut nor have principal places of business in Connecticut.

19.    This Court also has original jurisdiction over Count VIII, Violations of the Magnuson-Moss Warranty Act.

20.    The Court has supplemental jurisdiction over all other counts as they arise from the same nucleus of operative facts.

21.    Venue is proper in the Middle District of Florida pursuant to 28 USC § 1391(a) because a substantial part of the events giving rise to the claim occurred in the district, including the following:

    a.  Defendants' misrepresentations, inducements, and unfair and deceptive trade practices occurred in this district;

    b.  The Yacht was constructed in this district;

    c.  The defects and poor workmanship in the construction of the Yacht occurred in this district; and

    d.  The Yacht has returned numerous times to this district for purposes of attempted, but ultimately failed, repairs at the instruction and direction of Defendants.

22.    All conditions precedent to the initiation and maintenance of the action have been complied with, have occurred, or have been waived.

- 4 -

## FACTUAL ALLEGATIONS

### *Selection and Purchase of Yacht*

23.    Beginning in 2018, and after selling his 2016 Grand Banks, KAISER shopped extensively for a new boat, including attending at least seven (7) boat shows in Miami, Ft. Lauderdale, and Newport for that purpose.

24.    KAISER had particular preferences for a new yacht, including (a) desiring a new-build yacht with a warranty, rather than a re-sale; (b) not wanting a sportfish nor a super yacht; (c) desire for open views/unobstructed sight lines; (d) personal dislike of Italian-brand yachts; and (e) wanting a U.S.-based builder to enable him to visit the factory during the build process and avoid incurring excise tax.

25.    KAISER first became interested in the 70e model Ocean Alexander when he saw it at the 2019 Ft. Lauderdale International Boat Show, and it met his personal preferences.

26.    In considering whether to purchase the 70e Ocean Alexander, KAISER personally visited the Merritt Island factory where the 70e model was being built for a two-day visit in March of 2020.

27.    From all appearances, the factory was owned and operated by Ocean Alexander. All signage, employee uniforms, and marketing materials on display and provided to KAISER had Ocean Alexander branding.

28.    As a result of the advertising materials provided, the two-day factory visit, research, and discussions with Ocean Alexander representatives and

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

employees, KAISER made the decision to purchase a new-build 70e Ocean Alexander.

### *Yacht Purchase Agreement and Limited Warranty*

29.     Beginning on May 29, 2020, KAISER was presented with four (4) different proposed purchase agreements.

30.     The first two (2) versions were MarineMax East form agreements with MarineMax listed as the sole sales broker for the transaction.

31.     On June 11, 2020, the MarineMax purchase agreement was withdrawn and KAISER was provided a new, form purchase agreement from AM USA, listing MarineMax as the sole sales agent.

32.     On June 12, 2020, AM USA sent a revised AM USA purchase agreement that changed the sales agent to Dan Mundy and listed MarineMax as a "cooperating agent."

33.     Dan Mundy is the Vice President of AM USA.

34.      KAISER made multiple revisions to the terms and conditions of the proposed purchase agreement, but Mundy and AM USA failed to incorporate those changes into the final Purchase Agreement.

35.     KAISER executed the AM USA Purchase Agreement for the Yacht on June 17, 2020. *See Exhibit A.*

36.     The Purchase Agreement was for a new, special order, 2021 70e model, Ocean Alexander-brand motor yacht.

37.     The assigned hull was hull number 29.

- 6 -

38.     The Purchase Agreement provided for an estimated completion date of October 30, 2020, with a 45-day grace period.  Delivery of the completed Yacht was to be in Ft. Lauderdale, Florida.

39.     As a material term of the Purchase Agreement, it was represented to KAISER that the Yacht was warranted under an "Ocean Alexander Limited Warranty."

40.     The limited warranty was material to the purchase, as evidenced by the following:

a.  The limited warranty is specifically referenced on page one (1) of the Purchase Agreement under "Notes/Comments."

b.  The existence of a warranty is also specified in paragraph 17 of the Purchase Agreement under the heading "LIMITED WARRANTY."

c.  KAISER purchased a one-year extension of the one-year limited warranty, which was memorialized in writing and incorporated into the Purchase Agreement; as such, the warranty for the Yacht is a two-year warranty.  *See Exhibit A, at page 12.*

41.     KAISER was provided a one-page warranty document entitled Alexander Marine Co., Ltd. Limited Warranty, which was attached and incorporated into the Purchase Agreement.

42.     It is represented therein that:

Alexander Marine Co., Ltd. (hereinafter "AMC") warrants to the original retail purchaser (meaning: the first purchaser/user of the Yacht from the time of delivery of the Yacht in its new condition from

- 7 -

AMC's factory) of an Ocean Alexander yacht that it will repair or remove and replace, or cause such to be done, at a place and in a manner in its sole discretion, any part which was both made and installed by it in the new Yacht which is determined to be defective and which has been brought to its attention in writing with ONE YEAR of the first retail purchaser taking possession of the Yacht.

43.    KAISER's warranty was extended to two (2) years due to his purchase of an extended warranty; therefore, the Yacht was warranted for two (2) years from the date of delivery to KAISER.

44.    At the time that KAISER was negotiating the Purchase Agreement, he was told that he would receive the hull that was then in production, which was hull number 27.

45.    KAISER was advised that the hull was too far along in the production schedule to install the lighter wood interior package included in his Purchase Agreement.

46.    KAISER was ultimately assigned hull number 29.

47.    Unbeknownst to KAISER at the time he entered into the Purchase Agreement, that would be the last 70e hull ever constructed by the Ocean Alexander Companies before all production shut down at the Merritt Island factory.

48.    KAISER was also never advised by the Ocean Alexander Companies that, beginning in July of 2020, there would be three (3) rounds of employee layoffs, including the majority of the direct employees involved in the build of the Yacht. These scheduled layoffs resulted, directly and indirectly, in a skeleton crew of the

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

least-qualified workers being left to complete, or attempt to complete, the construction of the last 70e model hull.

49.     The factory closure and layoffs were known to and planned by the Ocean Alexander Companies prior to KAISER'S execution of his Purchase Agreement, but concealed from him.

50.     This knowledge and concealment are evidenced by an industry press release dated July 6, 2020 regarding same.  At no time prior to the execution of the Purchase Agreement was KAISER advised of this information, which was material to his decision to execute the Purchase Agreement.

51.     KAISER did not learn of the factory closure until three (3) to four (4) weeks *after* he executed the Purchase Agreement and made initial contractual payments.

52.     KAISER did not learn that there were going to be employee layoffs and voluntary departures until months *after* he executed the Purchase Agreement and made all but the final contractual payment.  Even then, KAISER was not made aware that the layoffs and employee departures would result in the least-skilled workers building the Yacht during the finishing stages.

53.     The skeleton crew of workers did not have the training, qualifications, experience, or resources to complete the Yacht generally, much less to complete the Yacht with the quality, standards, and workmanship that were advertised and promised to KAISER.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

54.     Additionally, the unskilled skeleton crew of workers was left unsupervised, and there was no quality control in place, during the most detailed stages of construction.

### *Pre-Delivery Surveys*

55.     On or about November 28, 2020, the Ocean Alexander Companies had an open-water sea trial performed to certify the Volvo engines. The Ocean Alexander Companies represented to KAISER that both engines met the manufacturer's specifications.

56.     On or about December 5, 2020, due to the impending physical closure of the Merritt Island factory, the Yacht was moved to EASTCOAST's facility in Ft. Lauderdale in an unfinished state.

57.     It was represented to KAISER that EASTCOAST was handling the final commissioning, pre-closing sea trial, and owner orientation. In reality, EASTCOAST was designated to complete the build of the Yacht due to the factory closure.

58.     However, unbeknownst to KAISER, EASTCOAST is an aftermarket warranty and service support provider for other, larger, Ocean Alexander models— not a yacht builder. It did not have the manpower, experience, or expertise to complete the extensive amount of work necessary to finish the construction of the Yacht.

59.     Unlike most owners, KAISER paid out of pocket for his own marine surveyors to conduct a detailed survey of the Yacht prior to closing.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

60.     Specifically, KAISER retained certified marine surveyors Allied Marine Consultants, Inc. ("Allied Marine") to survey the Yacht, including an out-of-water inspection and brief trial run.

61.     An independent mechanical and engine survey was also conducted by Marine International Diesels, Inc. ("Marine International").

62.     The Allied Marine survey detailed <u>sixty-seven (67) deficiencies</u> requiring repair. *A true and correct copy of the Allied Marine Survey Report is attached hereto as Exhibit B.*

63.     Marine International separately identified and documented an additional <u>thirty-two (32) deficiencies</u> in the engines and mechanical systems: including that the wrong propellers were installed at the factory, resulting in engine performance that fell below the manufacturer's specifications.

64.     This proves that the original engine certification from the Ocean Alexander Companies was false and that they knew or should have known it was false. *A true and correct copy of the Marine International Engine Survey report is attached hereto as Exhibit C.*

65.     In late January of 2021, the Ocean Alexander Companies requested an additional sea trial to confirm engine performance, in light of the different results from the November and December 2021 sea trials. KAISER agreed and the parameters of the sea trial were discussed by phone.

66.     Thereafter, the Ocean Alexander Companies suggested running the yacht at *less* than full load (fuel, water, and simulated tender). This suggestion was

- 11 -

contrary to the earlier phone discussion, which specifically addressed the necessity of loading the yacht appropriately to determine whether the engines could reach (or not reach) the desired Volvo specifications.

67.     The Ocean Alexander Companies suggested a modified sea trial protocol to try to conceal the blatantly erroneous November 2020 sea trial report, and to avoid incurring costs to replace the propellers.

68.     Due to KAISER'S objection and insistence on a "full load" sea trial, the Ocean Alexander Companies ultimately conceded that the original propellers installed on the Yacht were wrong and required replacement.

### *Warranty Notices and Demands*

69.     KAISER'S warranty notices and demands to the Ocean Alexander Companies began prior to closing on the Yacht, and have continued regularly throughout 2021 and 2022 while the two-year warranty remains in effect.

70.     On December 30, 2020, KAISER submitted a copy of the owner surveys, attached hereto as Exhibits B and C, to OCEAN ALEXANDER and demanded that all items identified therein be repaired.

71.     On January 6, 2021, KAISER emailed the Ocean Alexander Companies requesting their plans for addressing the survey repair items.

72.     The Ocean Alexander Companies confirmed that they were still in the process of reviewing the survey reports and formulating a "make ready/warranty plan" with an estimated timeline; and that all repair work would be overseen by EASTCOAST on behalf of the Ocean Alexander Companies.

- 12 -

73.     On January 13, 2021, KAISER emailed the Ocean Alexander Companies yet again asking for a schedule for when the work set forth in the survey reports would be completed.

74.     On January 17, 2021, KAISER notified the Ocean Alexander Companies of two additional defects to be added to the works list.

75.     On January 20, 2021, the Ocean Alexander Companies finally provided KAISER with a proposed warranty work list.  In response, KAISER requested that five (5) additional items, which were discussed by phone, be added to the work list.

76.     KAISER ultimately closed on the Yacht on February 10, 2021 and made final payment on that date.

77.     He agreed to close based upon the verbal and written agreements that all survey and punch-list items that remained to be done would be completed under the two-year express warranty that he purchased.

78.     On February 21, 2021, KAISER emailed the Ocean Alexander Companies again regarding the status of numerous open items on the warranty works list which still had not been completed; and confirming the addition of items as of discussions on February 12, 2021.

79.     On March 2, 2021, KAISER added additional agreed-upon items to the warranty works list and made clear that it was imperative that all work be completed by March 17 due to the planned extended stay on and use of the Yacht.

80.     On March 30, 2021, the warranty works list was updated and circulated with numerous open items remaining.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

81.    On April 20, 2021, KAISER provided written notice that all angle fasteners used to secure the ceiling speakers had broken, and that two (2) were found to be missing entirely.

82.    On June 3, 2021, KAISER emailed the Ocean Alexander Companies confirming and reviewing the numerous open warranty repair items that still remained outstanding.

83.    On June 16, 2021, KAISER emailed the Ocean Alexander Companies attaching the updated warranty works list.

84.    At this point, KAISER was forced to personally engage (with the knowledge and consent of the Ocean Alexander Companies) Norwalk Cove Marina to complete some of the outstanding items. There was agreement that KAISER would be reimbursed for all such expenditures. However, there were several items on the warranty works list that could not be properly performed by local repairers.

85.    On June 18, 2021, KAISER emailed the Ocean Alexander Companies after there was a complete lack of email or phone contact in response to prior emails.  KAISER also confirmed that numerous invoices would be submitted for payment.

86.    On or about June 30, 2021 a conference call was held to review the warranty works list and, by agreement, additional items were added.

87.    On August 5, 2021, KAISER emailed the Ocean Alexander Companies listing the updated repair schedule and listing other items which remained.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

88.     On August 25, 2021, KAISER notified the Ocean Alexander Companies in writing of problems with the water pump potentially caused by power interruption or air intrusion into the freshwater system.

89.     On November 10, 2021, KAISER notified the Ocean Alexander Companies in writing of five (5) new warranty items which the Ocean Alexander Companies agreed to address while the Yacht was to be in Ft. Lauderdale, Florida.

90.     On November 11, 2021, KAISER provided the Ocean Alexander Companies with additional details on the five (5) new items and failures that were occurring.

91.     On December 22, 2021, KAISER provided the Ocean Alexander Companies with a spreadsheet and associated invoices for all warranty repairs that KAISER paid for out-of-pocket and which the Ocean Alexander Companies had agreed to reimburse.

92.     On December 30, 2021, KAISER emailed the Ocean Alexander Companies demanding that they address and correct various leaks that had been ongoing for some time and still not corrected by the Ocean Alexander Companies. KAISER also provided the current warranty works list, dated December 29, 2021, which contained three (3) pages of outstanding warranty items.

93.     As of February 10, 2022, the Ocean Alexander Companies had not provided reimbursement nor responded in any fashion to KAISER.

- 15 -

94.     On March 1, 2022, the Ocean Alexander Companies requested copies of five (5) invoices, but failed to confirm when and if reimbursement would be forthcoming.

95.     After more than a full year of chasing OCEAN ALEXANDER with emails, documents, and phone calls, OCEAN ALEXANDER had failed to uphold its warranty obligations and verbal and written confirmations that it would complete the agreed-upon warranty works list, and failed to even reimburse KAISER for the out-of-pocket expenses he incurred to complete vital repairs on his own.

96.     In March of 2022, KAISER had a *second* marine survey conducted by certified marine surveyor, William R. Potter.

97.     The Potter Survey confirms that the Yacht still required service, repairs, and reconfiguration and documented a minimum of <u>twenty-eight (28) deficiencies</u>.  Each of these are, yet again, defects that existed at the time the Yacht left the factory and was delivered to KAISER, but which have still not been repaired by the Ocean Alexander Companies.  *A true and correct copy of the Potter Survey is attached hereto as Exhibit D.*

98.     On March 30, 2022, KAISER submitted a five-page written letter to the Ocean Alexander Companies, yet again demanding completion of the warranty work and reimbursement of submitted invoices.

99.     The Ocean Alexander Companies did not respond in any fashion to the March 30, 2022 letter.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

100.    On April 28, 2022, KAISER sent an additional six-page detailed letter to the Ocean Alexander Companies.  As of the date of this letter, KAISER had only been reimbursed $1,063 of the $30,200 he had spent due to the Ocean Alexander Companies' failure to comply with their obligations and promises.

101.    Despite the urgency of this correspondence, no response was received until May 10, 2022. On that date, Carol Hopkinson, Service Administrator for EASTCOAST, sent an email that only addressed the outstanding reimbursements. Therein she conceded as follows:

> our sincerest apologies for the lack of communication and transparency.  We dropped the ball on this, **these issues should have been resolved long ago**.  Your frustration is certainly recognized and noted.  We look forward to putting this behind us and making a fresh start moving forward.  We are here to assist in any way possible.

102.    Despite agreement to reimburse KAISER for all out-of-pocket warranty expenses, $10,699.29 from the original spreadsheet remains unpaid over nearly a year.

103.    Despite promises, representations, and contractual obligations, the Ocean Alexander Companies have failed to complete well-documented and agreed-upon warranty repairs.

### ***Defective Designed and/or Construction***

104.    In addition to the extensive unresolved warranty items, the Yacht is also plagued by other defective and dangerous conditions.

- 17 -

105.    During the very limited usage of the Yacht during the summer of 2021 (due to the various defects and resulting repairs), a number of additional defects became apparent which prevented regular usage of the Yacht.

106.    One was the inordinate amount of bow spray that overwhelmed the Yacht while underway due to the defective design and/or construction of the bow.

107.    Despite the clearly defective bow design, the Ocean Alexander Companies not only refused to re-design and repair it, but also refused to provide the requested Yacht drawings to KAISER'S naval architect.

108.    Due to the Ocean Alexander Companies' failure to provide the Yacht drawings, it is currently unknown whether the bow was designed defectively, or whether the Yacht's bow was not built to drawings and specifications.

109.    As a result, KAISER was forced to pay a total of $248,996.83 to re-design and re-construct the bow to allow for her safe navigation and enjoyment.

110.    Written notice of the bow defects and necessary rebuild was provided to the Ocean Alexander Companies.

111.    Additionally, it is believed that some of the well-documented defects and deficiencies in the Yacht may not be capable of repair or replacement without major structural and systems removals, thereby diminishing the overall fair market value of the Yacht.

## *Unfair and Deceptive Acts and Misrepresentations*

112.    Defendants, individually and collectively, knew prior to the effective date of the Purchase Agreement that the Merritt Island factory was closing and

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

that all business operations would be fully closed on or before December 31, 2020. This information was concealed from KAISER.

113.    Defendants, individually and collectively, knew prior to the effective date of the Purchase Agreement that Merritt Island factory employees were being consistently laid off and/or quitting in September, October, November, and December of 2020, during the most important stages of the construction of the Yacht.  This information was concealed from KAISER.

114.    Defendants, individually and collectively, knew prior to the effective date of the Purchase Agreement that these layoffs included direct employee positions that were involved in the hands-on construction of the Yacht; and that layoffs started with higher-skilled and higher-paid laborers. This information was concealed from KAISER.

115.    Defendants, individually and collectively, originally represented to KAISER that he would be assigned hull number 27, and then hull number 28. KAISER was subsequently convinced to take hull number 29. Hull number 29 turned out to be the last and final hull constructed by MERRITT ISLAND prior to its permanent closure.  This information was concealed from KAISER.

116.    Defendants, individually and collectively, were aware that the Yacht was being built and finished by an unskilled labor force and purposely failed to retain properly skilled electricians, plumbers, and outside trades. As a result, the Yacht was poorly built in numerous ways, such as plumbing hoses and wire runs that were poorly laid out and crossed, making them vulnerable to chafing, vibration,

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

and premature failure, in addition to creating difficulty in access. Defendants knowingly and purposely did this in order to maximize the profit from the sale and purportedly "complete" the Yacht in a rush before the factory closed permanently.

117. Defendants, individually and collectively, falsely represented to KAISER that the Volvo engines were successfully sea trialed at the factory, and certified to perform to the manufacturer's specifications. Further, Defendants, individually and collectively, provided a false sea trial report.

118. After receiving a conflicting engine survey from KAISER showing that the engines were not performing to the manufacturer's specifications, Defendants, individually and collectively, attempted to convince KAISER that an updated sea trial be done at less than full load to conceal the fact that the wrong propellers had been installed.

119. Defendants, individually and collectively, misrepresented to KAISER that the Yacht was completed and ready for delivery in Ft. Lauderdale in early December 2020, in compliance with the Purchase Agreement, subject to minor "punch list" items that are common with new builds. In reality, EASTCOAST was being tasked to complete construction of the Yacht, which was rushed and left incomplete due to the factory layoffs and closure. EASTCOAST was neither qualified nor equipped for the scope of the work that remained, all of which was concealed from KAISER.

120. Defendants, individually and collectively, consistently agreed and represented that all work on the owner survey reports and all subsequently added

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

warranty items would be completed, in order to induce KAISER to close and take delivery—but they failed to take any reasonable action to complete the promised repairs. Further, communications from KAISER went with significant delays in response, or were outright ignored.   In fact, KAISER has not received any substantive communication from Defendants since the May 10, 2022 email.

121.   The defects in the design and/or construction of the Yacht's bow, which resulted in dangerous and excessive spray, were known to the Defendants, individually and collectively.   The same or a substantially similar problem was known to exist on certain 95' model Ocean Alexanders, and is believed to exist on other 70e hulls.  This information was also concealed from KAISER.

122.   Pursuing promised warranty repairs kept the boat out of service for much of 2021, including the majority of the regular yachting season. The boat has been unusable for much of its time in the water.

123.   Defendants' consistent oral and written promises to complete the work were a ruse to merely appease KAISER in the hopes that the two-year express warranty would expire.

## COUNT I - NEGLIGENT MISREPRESENTATION AGAINST AM USA, MERRITT ISLAND, AND AME

124.   KAISER realleges and incorporates as if fully set forth herein the allegations of paragraphs 23-123.

125.   AM USA, MERRITT ISLAND, and AME, individually and in concert with each other, made the misrepresentations contained herein.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

126.   AM USA, MERRITT ISLAND, and AME, individually and in concert with each other, were negligent in making these misrepresentations.

127.   The misrepresentations were material.

128.   KAISER relied on these misrepresentations and, as a result of this reliance, executed the Purchase Agreement and made all payments required, agreed to accept hull number 29, and ultimately closed on the transaction and took delivery of the Yacht on February 10, 2021.

129.   KAISER suffered damages as a consequence of said misrepresentations, and is entitled to damages for same.

130.   Each of these Defendants is jointly and severally liable for said damages in an amount to be determined at trial.

## COUNT II - VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT AGAINST ALL DEFENDANTS

131.   KAISER realleges and incorporates as if fully set forth herein the allegations of paragraphs 23-123.

132.   Defendants, individually and collectively, have violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201, *et seq*.

133.   These violations include, but are not limited to, the acts of concealment and misrepresentation, detailed in paragraphs 112-123 above.

134.   By their actions and omissions, the Defendants have engaged in unconscionable acts and practices and unfair or deceptive acts or practices as proscribed by Section 501.204 of the Florida Statutes and Section 501.203(3) of the

- 22 -

Florida Statutes.

135.     Together, the misfeasance and malfeasance set forth in the preceding paragraphs and in the other counts of this Complaint constitute a pattern of acts that constitute unfair and deceptive trade practices.

136.     Defendants' unfair and deceptive trade practices proximately caused actual damages to KAISER, including costs to repair the Yacht, estimated costs to repair the Yacht, costs associated with surveyors, consultants, and other specialists; and the diminution in the value of the Yacht.

137.     KAISER was also required to retain counsel and to pay the reasonable fees and costs of same.

138.     KAISER is entitled to actual damages, treble damages, and attorney's fees and costs in an amount to be determined at trial.

139.     Each of these Defendants is jointly and severally liable for said damages in an amount to be determined at trial.

## COUNT III - FRAUDULENT INDUCEMENT AGAINST AM USA AND MERRITT ISLAND

140.     KAISER realleges and incorporates as if fully set forth herein the allegations of paragraphs 23-123.

141.     AM USA, MERRITT ISLAND AND AME made false statements of, and concealed, material facts related to the sale and delivery of the Yacht.

142.     AM USA, through its employee, representative, and agent, Dan Mundy, intentionally concealed from KAISER during contract negotiations that:

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

    a.  the Merritt Island factory would be closing as of December 31, 2020;

    b.  the Yacht would be built by lesser-skilled and lower-paid employees after planned rounds of layoffs and voluntary departures leading up to the factory closure; and

    c.  hull number 29 would be the last 70e constructed.

143.    Dan Mundy concealed these material facts with the intention of inducing KAISER to execute the Purchase Agreement, which he did.

144.    Dan Mundy also intentionally stated to KAISER that all survey and punch-list repairs would be completed under the two-year express warranty that KAISER purchased. However, at the time of these representations and affirmations by Mundy, there was no intention to undertake the repairs and fulfill the verbal and written promises to repair.

145.    Mundy made these statements and promises with the intention of inducing KAISER to make final payment, close, and take delivery of the Yacht, which he did on February 10, 2021.

146.    MERRITT ISLAND, through its employee, representative, and agent, Jonathan Gutierrez, intentionally concealed from KAISER during contract negotiation, factory visits, and communications that:

    a.  the Merritt Island factory would be closing as of December 31, 2020;

    b.  the Yacht would be built by lesser-skilled and lower-paid employees after planned rounds of layoffs leading up to the factory closure; and

    c.  hull number 29 would be the last 70e constructed.

- 24 -

147.   Jonathan Gutierrez, as executive vice president of MERRITT ISLAND, knew of the above facts and intentionally concealed and misrepresented same with the intent of inducing KAISER to execute the Purchase Agreement, which he did.

148.   KAISER relied on the representations made by Mundy and Gutierrez; and alternatively, relied upon the facts as represented by Mundy and Gutierrez. Due to this reliance, KAISER entered into the Purchase Agreement, made all contractual payments, and ultimately agreed to close on and take delivery of the Yacht on February 10, 2021.

149.   KAISER'S   reliance   on   the   above   representations   and misrepresentations has caused him injury, including, but not limited to, actual and direct damages, consequential and incidental damages, tort damages, attorney's fees, and costs as more fully described herein.

## COUNT IV - NEGLIGENCE AGAINST MERRITT ISLAND BOAT WORKS

150.   KAISER realleges and incorporates as if fully set forth herein the allegations of paragraphs 23-123.

151.   MERRITT ISLAND BOAT WORKS constructed and delivered the Yacht.

152.   It owed a duty to KAISER to use reasonable care and follow appropriate industry guidelines and standards in constructing the Yacht.

153.   MERRITT ISLAND breached the duties owed to KAISER by failing to use reasonable care and follow appropriate industry guidelines and standards in constructing the Yacht, as evidenced by the numerous structural, installation,

- 25 -

mechanical, and cosmetic defects documented in the owner surveys and warranty work lists.

154.    KAISER suffered actual, consequential, and incidental damages as a result of said negligence, and is entitled to damages for same.

## COUNT V - BREACH OF THE PURCHASE AGREEMENT AGAINST AM USA AND AME

155.    KAISER realleges and incorporates as if fully set forth herein the allegations of paragraphs 23-123.

156.    As sellers, as well as merchants of goods, AM USA was at all relevant times subject to Florida's Uniform Commercial Code.

157.    The Purchase Agreement, entered into on June 17, 2020 for the sale of the Yacht, was a contract between KAISER, as purchaser, and AM USA as seller, which entity is a division or subsidiary of AME.

158.    The sale of the Yacht is a sales transaction as contemplated by Florida's Uniform Commercial Code.

159.    For purposes of the Purchase Agreement, AME was AM USA's principal.

160.    AME, AM USA, and their agents were at all times governed by Florida's Uniform Commercial Code in their dealings with KAISER and his agents, including being subject to obligations of good faith and fair dealing.

161.    AME and AM USA breached the Purchase Agreement by failing to deliver a conforming Yacht.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

162.    AME and AM USA breached the Purchase Agreement by failing to repair the Yacht within a reasonable time.

163.    AME and AM USA's breaches of the Purchase Agreement damaged KAISER.

164.    Each of these Defendants is jointly and severally liable for said damages in an amount to be determined at trial.

## COUNT VI - BREACH OF EXPRESS WARRANTY AGAINST AMC, AM USA, AND EASTCOAST

165.    KAISER realleges and incorporates as if fully set forth herein the allegations of paragraphs 23-123.

166.    AMC, AM USA, and EASTCOAST each made express warranties relating to the Yacht.

167.    AM USA and EASTCOAST were also co-warrantors with AMC because they adopted the express warranty through their conduct and statements.

168.    KAISER relied on the written and oral express warranties in making his decision to  enter into the Purchase Agreement for the Yacht, and to later close on and take delivery of the Yacht.

169.    AMC, AM USA, and EASTCOAST failed and refused to honor these express warranties as  reflected in the various written communications, phone calls, meetings, and surveys described more fully herein.

170.    As a result of AMC, AM USA, and EASTCOAST's failures to honor the written and oral warranties, KAISER has suffered damages.

- 27 -

171.   Each of these Defendants is independently liable for said damages in an amount to be determined at trial.

172.   Each of these Defendants is also jointly and severally liable for said damages in an amount to be determined at trial.

## COUNT VII - BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST AM USA, AMC, AND AME

173.   KAISER realleges and incorporates as if fully set forth herein the allegations of paragraphs 23-123.

174.   KAISER had a contractual relationship with AM USA for the sale, construction, and delivery of the Yacht.

175.   KAISER had a contractual relationship with AMC under the express limited warranty provided by AMC to KAISER for the Yacht.

176.   AM USA and AMC are alter egos and agents of AME.

177.   Each such contract contained an implied covenant of good faith and fair dealing.

178.   AM USA and AMC breached their duties of good faith and fair dealing and acted in bad faith in their performance under the Purchase Agreement and the express warranty as detailed herein.

179.   AM USA, AMC, and AME's breaches of their duties proximately caused damages to KAISER in an amount to be determined at trial.

180.   Each of these Defendants is independently liable for said damages in an amount to be determined at trial.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

181.   Each of these Defendants is also jointly and severally liable for said damages in an amount to be determined at trial.

## COUNT VIII - VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT AGAINST AMC

182.   KAISER realleges and incorporates as if fully set forth herein the allegations of paragraphs 23-123.

183.   KAISER is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

184.   AMC is a "supplier" or "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

185.   At all times relevant, the Yacht was a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

186.   The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1), provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. At all times relevant, the written warranty provided for the Yacht was a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

187.   The Yacht's implied warranties include all alleged warranties that were not in writing and are covered under 15 U.S.C. § 2301(7).

188.   AMC was afforded reasonable opportunities to cure breaches of its written warranties. Any additional opportunities would be futile.

189.   At the time of sale, AMC knew, should have known, or was reckless in not knowing, of its misrepresentations and omissions concerning the

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

Yacht's inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defects.

190.    Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that KAISER resort to an informal dispute resolution procedure and/or afford AMC a reasonable opportunity to cure its breaches of warranty is excused and therefore deemed satisfied.

191.    Additionally, AMC's warranty violates 15 U.S.C. § 2302 in a number of ways, including the following:

  a. AMC does not provide the step-by-step procedure which the consumer should follow to obtain performance of any obligation under the warranty, including the identification of any person or class of persons authorized to perform the obligations set forth in the warranty.

  b. AMC does not provide any information respecting the availability of any informal dispute settlement procedure offered by it and a recital, where the warranty so provides, that the purchaser may be required to resort to such procedure before pursuing any legal remedies in the courts.

  c. It does not provide a brief, general description of the legal remedies available to the consumer.

  d. It does not specify the time at which AMC will perform any

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

obligations under the warranty.

    e.  It does not specify the period of time within which, after notice of a defect, malfunction, or failure to conform with the warranty, it will perform any obligations under the warranty.

192.    AMC's violations of 15 U.S.C. § 2302 render its limitations ineffective.

193.    AMC's violations of 15 U.S.C. § 2302 have damaged KAISER in an amount to be determined at trial.

<u>**DAMAGES**</u>

WHEREFORE, KAISER seeks final judgment in his favor for all damages recoverable by law including:

    (a)    Actual damages;

    (b)    Compensatory damages;

    (c)    Incidental damages;

    (d)    Consequential damages;

    (e)    Tort damages where permitted at law;

    (f)    Treble damages where permitted at law;

    (g)    Attorney's fees and expenses where permitted by contract or at law;

    (h)    Prejudgment and post-judgment interest;

    (i)    Taxable costs; and

    (j)    Such other relief as the Court deems appropriate and just.

HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

Dated:  January 20, 2023.

Respectfully submitted,

/s/  Krista Fowler Acuña
Krista Fowler Acuña
Fla. Bar No. 650791
HAMILTON, MILLER & BIRTHISEL, LLP
Attorneys for Petitioner
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131-2332
Telephone:   305-379-3686
Facsimile:   305-379-3690